**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHICAGO RABBINICAL COUNCIL, INC., an Illinois Not-For-Profit corporation, | |
| | Case No. |
| Plaintiff, | |
| v. | |
| T.J. BLACKBURN SYRUP WORKS, INC., a Texas corporation, | |
| Defendant. | |

**COMPLAINT**

Plaintiff, CHICAGO RABBINICAL COUNCIL, INC., by and through its attorneys, Aronberg Goldgehn Davis & Garmisa, for its complaint against T.J. BLACKBURN SYRUP WORKS, INC., a Texas corporation, states as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

**Nature of the Case**

1.      This action is brought by Plaintiff to put an end to Defendant's wrongful affixation of the "cRc" certification trademark (U.S. Registration No. 1,382,849) on its products, packages, and labels without Plaintiff's approval or permission to use that certification trademark.

2.      This is an action for trademark infringement in violation of 15 U.S.C. § 1114 (Section 32 of the Lanham Act); the use of false designation of origin and false and misleading descriptions and representations in violation of 15 U.S.C. § 1125(a) (Section 43 of the Lanham Act); trademark dilution in violation of 15 U.S.C. § 1125(c); trademark counterfeiting in violation of 15 U.S.C. § 1114(1); Illinois common law trademark infringement and unfair competition;

trademark dilution in violation of Illinois law (765 ILCS § 1036/65); and violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510/1 *et seq.*).

## The Parties

3.      Plaintiff, Chicago Rabbinical Council, Inc. ("CRC"), is an Internal Revenue Code Section 501(c)(3) not-for-profit corporation, which serves the public benefit and is organized and exists under the law of the State of Illinois.

4.      Defendant, T.J. Blackburn Syrup Works, Inc., is a corporation organized under the laws of the State of Texas with its principal place of business in Jefferson, Texas 75657.

## Jurisdiction and Venue

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 15 U.S.C. 1121, as it involves substantial claims arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and under the state laws of Illinois.

6.      This Court has personal jurisdiction over Defendant because Defendant transacted business relative to the claims made within the State of Illinois and within this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## Factual Background

### cRc Certification Trademark

8.      CRC is the oldest and most respected organization in the Midwest that provides kosher certifications to persons and businesses engaged in the manufacture, distribution, and sale of food.  The kosher certification process consists of a comprehensive review and inspection of the entire food manufacturing process, including a review or certification of all ingredients used

in the manufacture of an item, as well as, all equipment or utensils that come in contact with such ingredients.

9.      For more than 65 years, CRC has used the cRc certification trademark to indicate the food products or equipment used in connection with such food products are kosher.

10.      On January 7 1985, CRC filed a federal trademark application for the cRc

certification mark  ("cRc Mark").  The United States Patent and Trademark Office registered the cRc Mark on February 11, 1986 (U.S. Registration No. 1,382,849).  A true and correct copy of the registration certificate is attached as **Exhibit A**.

11.      The cRc Mark is "used by persons authorized by the certifier to certify a reliable rabbinical approval of food products as being kosher."

12.      A certification by CRC through the cRc Mark signifies a determination that in CRC's analysis, the product in question meets all requirements mandated for the production and consumption of kosher food.

13.      Consumers rely on the presence of the cRc Mark on products to fulfill his or her kosher obligations, as well as the companies who manufacture, distribute, and sell kosher products for the kosher consumer.

14.      The presence of the cRc Mark on a product provides an objective and unbiased certification by CRC that the equipment and/or processes used in manufacturing various food products meet or exceed kosher standards.

15.      CRC has invested substantial time, effort, and money educating and training its staff of supervisors and others to ensure compliance with its kosher certification standards.

16.     As a result of CRC's history, excellent reputation, and investment in the cRc Mark, CRC's kosher certification has become the most recognized, trustworthy, and highly regarded kosher certification in the Midwest.

17.     As a result of CRC's substantial efforts, the cRc Mark has become famous in the minds of consumers as a reliable and accurate kosher certification.

18.     In May 1999, CRC acquired Texas-K International ("Texas-K"), including all of its intellectual property and trademarks, including the certification mark  ("Texas Mark"). The United States Patent and Trademark Office registered the cRc Mark on November 27, 2007 (U.S. Registration No. 3,342,913). A true and correct copy of the registration certificate is attached as **Exhibit B**.

19.     The cRc Mark and the Texas Mark are extremely valuable assets of CRC.

*Defendant's wrongdoing*

20.     On March 1, 1995, Texas-K and Defendant entered into an agreement, renewable annually, which permitted Defendant's use of the Texas Mark to manufacture, package, and make available certain kosher products to the public. A true and correct copy of the Letter of Certification is attached as **Exhibit C**.

21.     Effective August 24, 2018, CRC, Price Chopper, and Defendant entered into a Private Label Agreement ("Aldi Private Label Agreement"), renewable annually, pursuant to which Defendant was permitted to use the cRc Mark to manufacture certain kosher products to the public to be distributed under a private label by Aldi. A true and correct copy of the Aldi Private Label Agreement is attached as **Exhibit D**.

22.     Effective July 9, 2014, CRC, Price Chopper Supermarkets, and Defendant entered into a Private Label Agreement ("Price Chopper Private Label Agreement"), renewable annually, pursuant to which Defendant was permitted to use the cRc Mark to manufacture certain kosher products to the public to be distributed under a private label by Price Chopper Supermarkets.  A true and correct copy of the Price Chopper Private Label Agreement is attached as **Exhibit E**.

23.     Effective May 19, 2021, CRC, Topco Associates, LLC, and Defendant entered into a Private Label Agreement ("Topco Private Label Agreement"), renewable annually, pursuant to which Defendant was permitted to use the cRc Mark to manufacture certain kosher products to the public to be distributed under a private label by Topco Associates, LLC.  A true and correct copy of the Topco Private Label Agreement is attached as **Exhibit F**.  The Aldi Private Label Agreement, the Price Chopper Private Label Agreement, and the Topco Private Label Agreement are collectively referred to as the "Private Label Agreements."

24.     Use of the cRc Mark on Defendant's products packaged and/or produced by it, and sold under its own name or under the Private Label Agreements represented to the community that it supervises the production of the product and that the products produced comply with the requirements of Halacha (Jewish Religious Dietary Law).

25.     In or about January 2022 CRC learned that Defendant committed multiple violations of the Private Label Agreements.  Among other violations, Defendant improperly manufactured and distributed non-kosher food products with labels bearing the Texas Mark and/or the cRc Mark.  Specifically, Defendant used non-kosher grape concentrate in the manufacture of its grape products. It also used the cRc Mark on its private label product for Price Chopper Supermarkets for items which were made on the contaminated lines. Preserves and marmalades made on the non-kosher grape line were compromised.

26.     When initially questioned about this issue, Defendant sought to conceal this information from Plaintiff.

27.     On February 3, 2022, CRC sent a letter to Defendant informing it of the serious violations of the Private Label Agreements.  The letter stated, among other things, that "your improper and misleading use of the Texas-K International and CRC trademarks and logos created confusion and falsely represented to the consumer that the CRC certifies the product as being kosher.  We understand that consumers mistakenly purchased and used the product on the understanding that it was kosher.  As a result, your actions have damaged the enormous value associated with the Texas-K International and the CRC trademarks and logos and is a violation of the CRC's right to its valuable intellectual property, as well as damage to the consuming public." The letter further stated that "Blackburn's use of the Texas-K International and CRC trademarks and logos on non-kosher products was unauthorized and constituted a serious infringement on the CRC's intellectual property and damages its goodwill."  A true and correct copy of the February 3, 2022 letter is attached as **Exhibit G**.

28.     All agreements between CRC and Defendant were terminated effective December 31, 2022.

29.     Defendant's wrongful acts were an intentional and willful misappropriation of the cRc Mark and/or the Texas Mark and the goodwill and reputation associated with them.

30.     Defendant's unauthorized use of the cRc Mark and/or the Texas Mark has been done with the intent to confuse and mislead the public into believing that the Defendant's products are kosher and have been approved by CRC.

31.     Defendant's wrongful acts have and will continue to have a substantial and adverse effect on United States commerce as the consumers are wrongfully informed and believe that Defendant's products are kosher and certified as such by CRC.

32.     Defendant's wrongful acts and/or willful infringements have caused harm and damage to CRC.

33.     Defendant has profited and will continue to profit from its unlawful actions.

34.     Defendant's unlawful actions are causing and will continue to cause CRC monetary damages in an amount presently unknown, but to be determined at trial.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

35.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

36.     CRC is the owner of the cRc Mark and the Texas Mark.

37.     The cRc Mark and the Texas Mark are valid and enforceable.

38.     Defendant improperly used the cRc Mark and/or the Texas Mark on its products, packages, and labels that were not under the authority or supervision of CRC and thus without authorization or permission from CRC.

39.     Defendant's use of the cRc Mark and the Texas Mark on its non-kosher products, packages, and labels have caused and/or is likely to cause confusion or mistake in the minds of consumers to believe that Defendant's products carrying the cRc Mark and the Texas Mark emanate or originate from CRC and/or that CRC has certified Defendant's non-kosher products, which are false.

40.     Defendant's infringing conduct is intended to exploit the goodwill and reputation associated with the cRc Mark and the Texas Mark and to obtain a competitive advantage without expenditure of resources, by a strategy of willful infringement.

41.     CRC has no control or supervision over the Defendant's non-kosher products that bear the cRc Mark and/or the Texas Mark.

42.     CRC's valuable goodwill has been and continues to be damaged by Defendant through its products, packages, and labels which are falsely certified as having been approved by the CRC.

43.     Defendant's wrongful acts and/or wrongful infringements, for which CRC has no adequate remedy at law, have caused and will continue to cause irreparable harm to CRC unless permanently enjoined.

44.     Defendant is liable for trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II
## FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE AND MISLEADING REPRESENTATIONS (15 U.S.C. § 1125(a))

45.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

46.     CRC is the owner of the cRc Mark and the Texas Mark.

47.     The cRc Mark and the Texas Mark are valid and enforceable.

48.     Defendant has used the cRc Mark on its products, packages, and labels without authorization or permission from CRC.

49.     Defendant's use of the cRc Mark and/or the Texas Mark on its non-kosher products, packages, and labels have caused and/or is likely to cause confusion or mistake in the minds of

consumers to believe that Defendant's products carrying the cRc Mark and/or the Texas Mark are certified by and/or that CRC has approved, sponsored, or otherwise associated itself with Defendant's products carrying the cRc Mark and/or the Texas Mark, which are false.

50. Defendant's use of the cRc Mark and/or the Texas Mark on its non-kosher products, packages, and labels misrepresents to the public that its goods are certified by CRC.

51. Defendant's wrongful conduct is intended to exploit the goodwill and reputation associated with the cRc Mark and the Texas Mark and to obtain a competitive advantage without expenditure of resources, by a strategy of willful infringement.

52. CRC has no control or supervision over Defendant's products that bear the cRc Mark and/or the Texas Mark.

53. CRC's valuable goodwill has been and continues to be damaged by Defendant through its products and packages which are falsely certified as meeting all certification requirements by the CRC.

54. Defendant's wrongful acts and/or wrongful infringements, for which CRC has no adequate remedy at law, has caused and will continue to cause irreparable harm to CRC unless permanently enjoined.

55. Defendant is liable for trademark infringement, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III
## TRADEMARK DILUTION (15 U.S.C. § 1125(c))

56. Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

57. CRC is the owner of the cRc Mark and the Texas Mark.

58. The cRc Mark and the Texas Mark are valid and enforceable.

59.     Defendant has used the cRc Mark and/or the Texas Mark on its non-kosher products, packages, and labels without authorization or permission from CRC.

60.     Due to CRC's 65 years of continuous use in commerce, the cRc Mark is famous within the meaning of the law, and was famous prior to the acts committed by Defendant discussed herein.

61.     Due to its continuous use in commerce by Texas-K International and CRC, the Texas Mark is famous within the meaning of the law, and was famous prior to the acts committed by Defendant discussed herein.

62.     Defendant's unauthorized use of the famous cRc Mark and the Texas Mark injures CRC's business reputation and has diluted and/or is likely to dilute the distinctive qualities of the cRc Mark and the Texas Mark.

63.     Defendant's wrongful acts and/or wrongful infringements, for which CRC has no adequate remedy at law, have caused and will continue to cause irreparable harm to CRC unless permanently enjoined.

64.     Defendant is liable for trademark dilution, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c).

## COUNT IV
## TRADEMARK COUNTERFEITING (15 U.S.C. § 1114(1))

65.     Plaintiff repeats and re-alleges each of the foregoing paragraphs as though fully set forth herein.

66.     CRC is the owner of the cRc Mark and the Texas Mark.

67.     The cRc Mark and the Texas Mark are valid and enforceable.

68.     Defendant has used the cRc Mark and/or the Texas Mark on its non-kosher products, packages, and labels without authorization or permission from CRC.

69.     Defendant's use of the cRc Mark and/or the Texas Mark on its non-kosher products, packages, and labels have caused and/or is likely to cause confusion or mistake in the minds of consumers to believe that Defendant's products carrying the cRc Mark and/or the Texas Mark are certified by and/or that CRC has approved, sponsored, or otherwise associated itself with Defendant's products carrying the cRc Mark or the Texas Mark, which are false.

70.     Defendant's use of the cRc Mark and/or the Texas Mark on its non-kosher products, packages, and labels misrepresents to the public that its goods are certified by CRC.

71.     Defendant's wrongful conduct is intended to exploit the goodwill and reputation associated with the cRc Mark and the Texas Mark and to obtain a competitive advantage without expenditure of resources, by a strategy of willful infringement.

72.     CRC has no control or supervision over Defendant's products that bear the cRc Mark and/or the Texas Mark.

73.     CRC's valuable goodwill has been and continues to be damaged by Defendant through its products and packages which are falsely certified as meeting all certification requirements by the CRC.

74.     Defendant's wrongful acts and/or wrongful infringements, for which CRC has no adequate remedy at law, has caused and will continue to cause irreparable harm to CRC unless permanently enjoined.

75.     Defendant's actions constitute willful and intentional use of counterfeits of the cRc Mark in total disregard of CRC's proprietary rights.

76.     Defendant's knowledge that the use, reproduction, counterfeit, copy, or colorable imitation of the cRc Mark and/or the Texas Mark has been and continues to be a violation of CRC's rights.

77.     Defendant's infringement is not innocent because it has had prior and ongoing notice of the cRc Mark and the Texas Mark.

78.     Defendant is liable for trademark counterfeiting in violation of 15 U.S.C. § 1114(1).

79.     Defendant's actions make this case exceptional under 15 U.S.C. § 1117(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, CHICAGO RABBINICAL COUNCIL, INC., respectfully requests that this Court:

1.     Grant judgment in favor of CRC and against Defendant on all claims;

2.     Temporarily, preliminarily, and permanently enjoin and restrain Defendant, their officers, agents, servants, employees, attorneys, successors, assignees, and subsidiaries, and any and all persons acting in concert or participating with them, from:

       a.     using the cRc Mark or the Texas Mark, or any reproduction, counterfeit, copy, or colorable image of said marks, in connection with the manufacturing, distribution, transportation, sale, offer for sale, or distribution of food products, that is not a genuine CRC kosher certification;

       b.     using the cRc Mark or the Texas Mark, or any reproduction, counterfeit, copy, or colorable imitation of the same, in any manner likely to cause others to believe that Defendant's products are approved by CRC;

       c.     passing-off, inducing, or enabling others to sell or pass off any products, which are not approved by CRC as having been approved by CRC;

       d.     making any false or misleading statements regarding CRC or its services, or the relationship between CRC and Defendant;

e.      committing any other acts calculated to cause purchasers to believe that Defendant's products are approved by CRC;

f.      shipping, delivering, holding for sale, importing, distributing, returning, transferring, or otherwise moving or disposing of in any manner such kosher certifications falsely beating the cRc Mark or any reproduction, counterfeit, copy, or colorable imitation of the same;

g.      disposing of, destroying, moving, secreting, relocating, and/or transferring any and all of Defendant's stock and inventory of wrongfully labeled products branded with the cRc Mark or the Texas Mark, without Court direction; and

h.      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs.

3.      Order Defendant and any and all persons controlled by or acting in concert with Defendant to be required to deliver up to CRC for destruction all goods, packages, and any other written or printed materials that bear or depict the cRc Mark or the Texas Mark, or any reproduction, counterfeit, copy, or colorable imitation of the same, or that are otherwise in violation of this Court's order issued pursuant hereto, an all means for making the same;

4.      Order Defendant to account for, and pay over to CRC, Defendant's profits, all damages sustained by CRC, and costs of this action pursuant to 15 U.S.C. § 1117(a);

5.      Increase the amount of damages and/or profits awarded to CRC in a sum equal to three times the actual damages suffered by CRC, as provided in 15 U.S.C. § 1117(b);

6.      Award CRC statutory damages for Defendant's use of a counterfeit mark in the amount of $2,000,000 per counterfeit mark per type of food sold, offered for sale, or distributed pursuant to 5 U.S.C. § 1117(c).

7.      Award CRC such punitive damages for Defendant's willful and intentional acts of unfair competition and infringement of CRC's rights that the Court shall deem just and proper;

8.      Award CRC the fees, costs, and disbursements, with interest, expended in connection with any actions taken to investigate and confirm the claims made herein;

9.      Award CRC its reasonable attorneys' fees, costs, disbursements, with interests, as provided by law;

10.     Grant such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.


Dated: January 31, 2023                          Respectfully submitted,


                                                 /s/ *Nathan H. Lichtenstein*
                                                 Nathan H. Lichtenstein

                                                 ***One of the Attorneys for Plaintiff, Chicago Rabbinical Council, Inc.***


Nathan H. Lichtenstein
ARONBERG GOLDGEHN
330 North Wabash Avenue, Suite 1700
Chicago, IL 60611
312-755-3148
nlichtenstein@agdglaw.com

14